UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SANDRA MIXON,

    Plaintiff,

v.                                          Case No. 8:20-cv-2991-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 257-69). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 81-140, 143-48, 153-64). Plaintiff then

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

requested an administrative hearing (Tr. 165-66). Per Plaintiff's request, the ALJ held a telephonic hearing at which Plaintiff appeared and testified (Tr. 45-75). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 17-44). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6, 251-53). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1971, claimed disability beginning May 7, 2018 (Tr. 257, 264). Plaintiff obtained at least a high school education (Tr. 294). Plaintiff's past relevant work experience included work as a customer service representative and a dispatcher (Tr. 70, 294). Plaintiff alleged disability due to diabetes mellitus, hypertension, depression, bipolar disorder, and chronic anemia (Tr. 293).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through March 31, 2023 and had not engaged in substantial gainful activity since May 7, 2018, the alleged onset date (Tr. 22). After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, hypertension, anemia, vertigo, bilateral knee disorder, lower back disorder, type 2 diabetes mellitus, right foot osteoarthritis, left foot disorder, right shoulder disorder,

bipolar disorder, and posttraumatic stress disorder (Tr. 22). Notwithstanding the noted impairments, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 24). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> She is limited to the frequent use of hand controls and foot controls; frequent reaching, handling, and fingering; no climbing of ropes, ladders, or scaffolds; no kneeling or crawling; she can perform other postural activities no more than occasionally; she can tolerate occasional exposure to unprotected heights, moving mechanical parts, extreme temperatures, humidity, wetness, and vibration; she is limited to perform routine tasks; she is limited to simple work-related decisions; and she is limited to frequent interaction with supervisors, coworkers, and the public.

(Tr. 27). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 32).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform her past relevant work (Tr. 35). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an address clerk, a document preparer, and an office clerk (Tr.

36, 71-72). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 36-37).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his

or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal

analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by failing to provide substantial evidence for his findings that (1) Plaintiff would not need to use a walker for ambulation; and (2) Dr. Luke Chiou's and ARNP Patricia Souter's opinions were unpersuasive. For the following reasons, the ALJ failed to apply the correct legal standards, and the ALJ's decision is not supported by substantial evidence.

**A.  Use of a Walker**

First, Plaintiff contends that substantial evidence does not support the ALJ's finding as to Plaintiff's subjective complaints regarding the need to use a walker for ambulation. At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record

6

and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the Commissioner must consider all the claimant's symptoms,[2] including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the

---

[2] The regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

objective evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. A claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). Rather, to establish a disability based on testimony of pain and other symptoms, the claimant must establish evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the SSA determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the SSA evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ does not find the claimant's subjective testimony supported by the record, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in

the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995).

Here, Plaintiff argues that the ALJ failed to properly consider Plaintiff's need to use a walker for ambulation. In December 2019, during an appointment to follow up on Plaintiff's diabetes, Dr. Roshni Patel listed Plaintiff's diagnoses as, among other things, osteoarthritis of her foot joint, right ankle pain, right foot pain, and an ankle sprain in the right ankle, all of which began in August 2019 (Tr. 1445). Indeed, an August 2019 X-ray of the right ankle confirmed Plaintiff's mild-to-moderate osteoarthritis involving several articulations of the right ankle and hindfoot, along with dorsal sparring of the talonavicular joint and plantar calcaneal spurring (Tr. 1537-38). Upon examination in December 2019, Dr. Patel noted tenderness and limited range of motion in Plaintiff's joints, bones, and muscles and, more specifically, noted swelling, tenderness, erythema, reduced range of motion, and pain on palpation in Plaintiff's right ankle (Tr. 1448). At that time, Dr. Patel indicated that Plaintiff had been prescribed a wheeled walker with a seat to address Plaintiff's osteoarthritis in her ankle and foot (Tr. 1449, 1575). Dr. Patel noted that Plaintiff should use the rolling walker as directed to help with ambulation daily (Tr. 1449). Regarding the estimated duration or length of need for the use of the rolling walker, Dr. Patel noted "LIFETIME" (Tr. 1449). After receiving her prescription for the rolling walker, Plaintiff obtained the walker in January 2020 (Tr. 1586-87)

During the administrative hearing, Plaintiff testified that she received treatment for her pain in her lower back, knees, ankles, and feet, as the pain affected

9

her ability to walk (Tr. 55).  According to Plaintiff, her primary physician prescribed her a rolling walker and medication to address the pain (Tr. 55).  Plaintiff indicated that she used the rolling walker at least three times per week when she was out at doctors' appointments and at the pharmacy to pick up her medications (Tr. 55).  She stated that she did not need to use the walker at home because she was close to the kitchen, living room, and other areas inside the home, and everything was close enough within the home that she could reach (Tr. 55-56).  Upon further questioning by the ALJ, Plaintiff reiterated that she needed the walker and had to use it while going to her appointments, including her doctors' appointments, and the pharmacy (Tr. 56).  Plaintiff estimated that she could only walk about 10 feet without the walker before she would experience pain in her lower back (Tr. 56).  Regarding her ability to stand, Plaintiff stated that she could not stand for more than 10 minutes before she started experiencing pain and therefore required the walker for balance (Tr. 56-57).  Finally, when asked about her ability to shop for groceries, Plaintiff testified that her friend would take her to the store, she used a motorized cart while shopping, and her friend's son would take the bags into the house for her (Tr. 58).

Later in the administrative hearing, the ALJ and Plaintiff's representative posed several hypotheticals to the VE (Tr. 70-74).  Specifically, with respect to the use of an assistive device for ambulation, the ALJ and VE engaged in the following exchange:

> ALJ:  All right.  Thank you.  And if the individual were further limited such that the individual required the use of an assistive device for ambulation, but could still use the free hand for lifting and carrying, could those jobs still be performed?

>    VE:   Yes. In my opinion, the individual could still perform sedentary work.
>
>    ALJ:  And if I changed that such that both hands were required for the assistive device such that the individual could not use their hands for lifting and carrying while ambulating, would that eliminate those jobs and other sedentary jobs?
>
>    VE:   Yes, in my opinion.

(Tr. 72). The VE indicated that she based her testimony regarding the use of an assistive device on her vocational experience of being a vocational case manager and her familiarity with the job trends in the national economy since she performed labor market research on a weekly basis to try to locate jobs for individuals (Tr. 72-73).

Following the administrative hearing, the ALJ issued his administrative decision finding Plaintiff not disabled after considering the evidence of record and both Plaintiff's and the VE's testimony during the hearing (Tr. 17-44). In the administrative decision, the ALJ acknowledged Plaintiff's testimony regarding the use of a rolling walker prescribed by her primary care physician (Tr. 27) and further stated: "As for the claimant's use of a rolling walker, this was only recently prescribed incident to an acute right foot injury, and there is no indication in the record that the continued use of this device will be medically necessary on a long-term basis for [Plaintiff's] established medical conditions" (Tr. 33). The record does not support the ALJ's assessment of Plaintiff's need for a rolling walker, however.

As an initial matter, the rolling walker was prescribed to address Plaintiff's chronic condition of osteoarthritis in the foot and ankle for lifetime use rather than

11

for temporary use to address an acute injury (Tr. 1449, 1575). Further, while Plaintiff may have shown mild improvement on occasion, she consistently presented with complaints of pain and demonstrated pain, tenderness, and limited range of motion in her joints, bones, and muscles and indicated exacerbation of her symptoms upon overuse. For example, in March 2020, Plaintiff complained of muscle aches, arthralgias, and joint pain and demonstrated tenderness and limited range of motion in her joints, bones, and muscles and swelling, erythema, reduced range of motion, and pain on palpation in her right ankle as well as limited ambulation (Tr. 1561-62). About a week later, Plaintiff continued to complain of right foot pain but demonstrated full strength and extension in the ankles and feet and indicated that she probably "overdid it" (Tr. 1549-53). Moreover, Plaintiff's testimony regarding her use of the rolling walker or even a motorized cart appears consistent with Plaintiff's medical records and the prescription of a rolling walker for lifetime use to assist with ambulation due to osteoarthritis in the ankle and foot. Given the VE's testimony regarding the preclusion of sedentary work for a hypothetical individual with Plaintiff's background and limitations if such individual required the use of both hands for an assistive device, the issue of Plaintiff's use of a rolling walker for ambulation is central to whether Plaintiff can perform other work in the national economy and, thus, whether Plaintiff is in fact disabled. Accordingly, remand is warranted on the issue, as substantial evidence does not support the ALJ's decision. Upon remand, therefore, the ALJ is directed to properly address Plaintiff's use of a rolling walker and the medical and other

evidence relating to Plaintiff's use of the walker and her musculoskeletal impairments and limitations.

### B. Medical Opinions

Plaintiff also contends that substantial evidence does not support the ALJ's finding that both Dr. Chiou's and ARNP Souter's opinions were unpersuasive. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel*, 631 F.3d at 1179 (citation omitted). The ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

Previously, in the Eleventh Circuit, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel.*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause existed where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Claims filed on or after March 27, 2017 are governed by a new regulation applying

a modified standard for the handling of opinions from treating physicians, however. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).  Of note, the new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017.  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 2022 WL 2298528, at *2-4 (11th Cir. June 27, 2022); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, at *5 n.9 (11th Cir. July 15, 2021).[3]  Indeed, the Eleventh Circuit recently concluded that, since the new regulations fall within the scope of the Commissioner's authority and are not arbitrary and capricious, the new regulations abrogate the Eleventh Circuit's prior precedents applying the so-called treating-physician rule.  *Harner*, 2022 WL 2298528, at *2-4.  Accordingly, since Plaintiff submitted her application for benefits in 2018 (Tr. 257-69), the ALJ properly applied the new regulation.

Namely, under 20 C.F.R. §§ 404.1520c and 416.920c, an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding, including from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, in assessing a medical opinion, an ALJ considers a variety of factors, including but not limited to whether an opinion is well-supported, whether an opinion is consistent with the record, the treatment relationship between the medical source and the claimant, and the area of the

---

[3]  Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

14

medical source's specialization. 20 C.F.R. §§ 404.1520c(c)(1)-(4), 416.920c(c)(1)-(4). The primary factors an ALJ will consider when evaluating the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Specifically, the more a medical source presents objective medical evidence and supporting explanations to support the opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Further, the more consistent the medical opinion is with the evidence from other medical sources and nonmedical sources, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Beyond supportability and consistency, an ALJ may also consider the relationship the medical source maintains with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether the medical source examined the claimant, in addition to other factors. 20 C.F.R. §§ 404.1520c(c)(3)(i)-(v) & (5), 416.920c(c)(3)(i)-(v) & (5).

Here, Plaintiff contends that the ALJ erred in his consideration of Dr. Chiou's and ARNP Souter's opinions by (1) asserting that the mental status examinations were inconsistent with the functional limitations described by both Dr. Chiou and ARNP Souter, and (2) focusing exclusively on the mental status findings. Since remand is warranted on the first issue, the Court need not address this issue. Upon remand, however, the ALJ should consider Plaintiff's arguments

regarding the opinions of Dr. Chiou and ARNP Souter to the extent necessary to render a new decision.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is REVERSED and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings consistent with this Order.

2. The Clerk is directed to enter final judgment in favor of Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 19th day of July, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record